# UNITED STATES DISTRICT COURT

_____DISTRICT OF MASSACHUSETTS_____

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

M.J. No.: CJM-1025-JGD

**PEDRO SANTOS, A/K/A "MARIO"**
**HARRINGTON COLON, A/K/A "JAVI"**
(Name and Address of Defendants)

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief: Since about **October 1, 2004** in **Essex County and elsewhere** in the District of **Massachusetts**, defendants did knowingly or intentionally conspire to distribute controlled substances, to wit: (i) more than 50 grams of crack cocaine, also known as "crack cocaine"; and, (ii) cocaine, both Schedule II controlled substances, in violation of Title **21** United States Code, Section(s) **846**.

I further state that I am a **FBI Special Agent** and that this complaint is based on the following facts:

**Please see attached Affidavit of FBI Special Agent Jeffrey E. Wood, Jr.**

Continued on the attached sheet and made a part hereof:    [x] Yes    [ ] No

_____
Signature of Complainant
FBI Special Jeffrey E. Wood, Jr.

Sworn to before me and subscribed in my presence,

**February 14, 2005** at    **Boston, Massachusetts**
Date                                    City and State

JUDITH G. DEIN
**United States Magistrate Judge**    _____
Name and Title of Judicial Officer    Signature of Judicial Officer

## AFFIDAVIT OF JEFFREY E. WOOD, JR.

I, Jeffrey E. Wood, Jr., being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI for more than five years. I am currently assigned to the Violent Crime Task Force ("VCTF") investigating, among other things, drug and drug-related crimes in the Lawrence, Massachusetts area.

2. During my five plus years with the FBI, I have been involved in numerous investigations relating to a wide variety of suspected criminal activity including drug and firearms trafficking, bank robberies, armored car robberies, and kidnaping. I have received training in the field of narcotics enforcement and investigations including, but not limited to, training regarding the identification of common street drugs such as cocaine, crack cocaine, and heroin. Through my training, education, and experience, I have also become familiar with the manner in which illegal drugs are transported, stored, and distributed, and with the methods of payment for such drugs.

3. I submit this affidavit in support of an application for a criminal complaint charging HARRINGTON COLON, A/K/A "JAVI," AND PEDRO SANTOS, A/K/A "MARIO," with conspiracy to distribute controlled substances, to wit: (i) more than 50 grams of cocaine base, a/k/a "crack cocaine"; and, (ii) cocaine in violation of 21

U.S.C. §846. This affidavit is submitted for the limited purpose of establishing probable cause to believe that COLON and SANTOS have committed the above-described offense. Accordingly, I have not included each and every fact known to myself and other law enforcement officers involved in this investigation.

### OVERVIEW OF THE INVESTIGATION

4.  Since October, 2004, I, along with other law enforcement agents assigned to the FBI's North Shore Gang Unit have been investigating the criminal activities of COLON and SANTOS who, as is indicated more fully below, distribute illegal drugs in the greater Lawrence, Massachusetts area. As a result of my personal participation in the investigation, interviews with and analysis of reports submitted by other law enforcement personnel, interviews of confidential sources, and my consultations with other law enforcement officers, I am familiar with this investigation.

5.  The investigation of COLON and SANTOS was initiated in the Fall of 2004 based on information provided to the Massachusetts State Police by a confidential source regarding the trafficking of cocaine by an individual who he knew as "Jay Stiles" (but who has later identified as HARRINGTON COLON).[1] The

---

[1] Jay Stiles was originally thought by agents to be an alias of Jay Taveras of Lawrence. However, on October 5, 2004, the UC was shown a picture of Taveras and could not identify him as the person who has sold the UC cocaine earlier that day. As a result, the State Police conducted a motor vehicle stop of

2

CS was thereafter able to introduce an undercover officer (hereinafter "the UC" or "UC-1") to COLON. Between October 5, 2004, and January 31, 2005, the UC made nine controlled purchases of cocaine or crack cocaine from COLON and/or SANTOS. Each of the buys was set up by one or more consensually recorded telephone calls between the UC and COLON. Each of the buys was also surveilled by law enforcement agents and was either audiotaped and/or videotaped.

6. During the course of these controlled purchases, COLON indicated that he was part of an organization that could deliver kilo quantities of cocaine and crack cocaine (as well as other drugs) to the UC. When the UC asked for prices of such quantities of cocaine and crack cocaine, COLON indicated that he would have to consult his boss. COLON thereafter introduced the UC to his boss who was identified as SANTOS. SANTOS was present at several of the purchases of crack cocaine and undertook to negotiate the sale of a kilo of cocaine and a kilo of crack cocaine to the UC in exchange for amounts of marijuana. Although this transaction was ultimately abandoned by SANTOS and COLON after they concluded that the price of the marijuana offered by the UC was too high, SANTOS sold an ounce of cocaine to the UC

---

"Jay's" car on October 12, 2004 immediately after the crack cocaine transaction that took place that day. In that stop, the police determined that the individual identified as "Jay" was HARRINGTON COLON and that the individual who COLON identified as his boss was PEDRO SANTOS.

3

(with COLON's assistance) on January 31, 2005.

7. All of the drug transactions conducted by COLON and SANTOS were for amounts of cocaine or crack cocaine ranging from 1/2 ounce to 2 ounces.[2] Of the nine transactions, seven involved crack cocaine and two involved powder cocaine. The following chart summarizes these transactions:

| DATE | DRUG | AMOUNT[3] |
|---|---|---|
| 10-5-04 | powder cocaine | 13.8 grams |
| 10-6-04 | crack cocaine | 26.3 grams |
| 10-12-04 | crack cocaine | 23.9 grams |
| 11-8-04 | crack cocaine | 55.7 grams |
| 11-21-04 | crack cocaine | 54.8 grams |
| 11-30-04 | crack cocaine | 55.6 grams |
| 12-14-04 | crack cocaine | 53.6 grams |
| 12-30-04 | crack cocaine | 55.6 grams |
| 1-30-05 | powder cocaine | 28 grams (est) |

**TOTAL    325.5 grams crack cocaine**
**          41.8 grams cocaine (est.)**

### THE DRUG DELIVERIES MADE BY HARRINGTON COLON

8. HARRINGTON COLON delivered the drugs to the UC on eight of the the nine transactions summarized above (i.e., on all but

---

[2] PEDRO SANTOS participated in many of these transactions and delivered cocaine to the UC on January 31, 2005. COLON delivered the drugs to the UC on all of the remaining deals.

[3] With the exception of the transaction that took place on January 31, 2005, all drug types and amounts are based on certifications provided by the DEA's Northeast Regional Laboratory. The certification for the January 31, 2005 transaction is pending and is therefore based on a field test and weight estimate. Identifications of "crack cocaine" are based on laboratory certifications of the substances as cocaine base and inspections by me or other agents who are familiar with the particular color, odor and texture of crack cocaine.

4

the transaction that took place on January 31, 2005 in which the drugs were delivered by SANTOS). Each of drug deliveries made by COLON took place generally as follows: the UC would have one or more telephone calls with COLON in which the UC would request to purchase a quantity of cocaine or crack cocaine, COLON and the UC would negotiate the price, and the parties would arrange to meet at a particular location in or around Lawrence, Massachusetts.

9.  Once the time and place for the transaction had been set, the UC would be provided with official government funds ("OGF"), a transmitter, and a car equipped with audio and/or video recording equipment. The UC and would then meet COLON at the pre-arranged location where the UC would pay COLON and COLON would give the UC drugs. The purchase on October 12, 2004, is typical of the purchases made in this investigation and is described in detail below.

### THE SALE OF CRACK COCAINE ON OCTOBER 12, 2004

10. At approximately 3:30 p.m. on October 12, 2004, the UC placed a consenually recorded telephone call to COLON in which COLON agreed to sell the UC an ounce of crack cocaine. During subsequent calls with the UC (that were also recorded), COLON agreed to a price of $1100 and to meet the UC at 5:00 p.m. in the Emergency Room Parking Lot at Lawrence General Hospital.

11. Shortly before 5 p.m., the UC was provided with $1,100 in OGF, a body recorder, a transmitter, and was followed to the

emergency room parking lot. COLON thereafter arrived at the emergency room in a blue Crown Victoria driven by another man later identified as SANTOS. The Crown Victoria is registered in SANTOS' name.

12. COLON motioned to the UC that he should follow the Crown Victoria. The UC did so and drove to Catalanios Pizza Shop in Lawrence where COLON got out of the Crown Victoria, entered the UC's car and took $1100 from the UC in exchange for a bag containing what was subsequently certified to be 23.9 grams of cocaine base, a/k/a "crack cocaine."

13. During this purchase, COLON indicated to the UC that he had unlimited access to cocaine and could provide the UC with quantities of heroin as well. When the UC asked COLON for a price for a half-kilo of cocaine, COLON indicated that he would have to ask the "guy above him," indicating to the driver of the Crown Victoria (SANTOS).

14. Shortly after the completion of this transaction, a marked State Police Cruiser conducted a traffic stop on the Crown Victoria. In this stop, the individual who had delivered the drugs to the UC identified himself as HARRINGTON COLON and the driver (who COLON had told the UC was the "guy above him") identified himself as PEDRO SANTOS.[4] The UC identified these

---

[4] A third individual who identified himself as ISSAC FERRARRA was also present in the Crown Victoria both at the time of the traffic stop and while the drug transaction took place.

individuals from the video taken by a camera mounted in the cruiser.

### COLON'S DESCRIPTION OF SANTOS' ORGANIZATION AND THE UC'S NEGOTIATION OF ADDITIONAL DRUG TRANSACTIONS WITH COLON AND SANTOS

15. Throughout the investigation, COLON indicated to the UC that he was part of a substantial drug organization and therefore had access to larger amounts of cocaine and other drugs. For example, during the transaction that took place on October 6, 2004, COLON told the UC that he was part of a "crew" that sold drugs. Although COLON stated that he was not the boss of this crew, he claimed that he could supply the UC with a half kilogram of cocaine, crack cocaine, and other drugs. Six days later, on October 12, 2004, COLON reiterated to the UC that he had unlimited access to cocaine and identified the driver of the Crown Victoria (SANTOS) as his boss.

16. The UC thereafter began negotiations with COLON and SANTOS to purchase a kilogram of powder cocaine and a kilogram of crack cocaine. On November 8, 2004, SANTOS told the UC (while sitting in a car with COLON and the UC) that he sold 1-2 kilograms of cocaine per week and quoted the UC a price of $15,000 for a half-kilo of crack cocaine. On November 21, 2004, COLON quoted the UC a price of $12,500 for a half-kilo of cocaine and $25,000 for a full kilogram. On December 14, 2004, COLON told the UC that he and SANTOS (identified by COLON by the alias

"Mario") were "all about making money" and that they would be interested in *buying* marijuana from the UC.

17. On December 22, 2004, the UC met with COLON and SANTOS at a Ruby Tuesday's Restaurant in Tewksbury to discuss additional drug deals. During this meeting (which was also recorded), COLON and SANTOS offered to supply the UC with a kilogram of powder cocaine, a kilogram of crack cocaine, and an amount of cash in exchange for 75 pounds of high-grade marijuana. SANTOS and COLON also told the UC during this meeting that they sold more powder cocaine than crack cocaine (stating that they had sold 200 grams of powder cocaine the previous day) but could supply the UC with up to 6 ounces of crack cocaine at any time.

18. Negotiations for this larger "kilo" deal thereafter continued. During the transaction that took place on December 30, 2004 (during which COLON sold the UC two ounces of crack), COLON and SANTOS confirmed their willingness to exchange kilos of cocaine and crack cocaine and cash for seventy-five pounds of marijuana and asked to see a sample of the marijuana. The UC thereafter showed SANTOS and COLON a quantity of marijuana that the UC described as representative of what the UC could sell for $2000 per pound.[5] Ultimately, COLON and SANTOS declined to

---

[5] There were two such meetings. On January 31, 2005, the UC allowed Santos and COLON to see an amount of marijuana that the UC claimed was representative. On February 2, 2005, COLON and SANTOS inspected a sample and took a small amount of marijuana without the UCs' permission.

8

consummate this transaction because they stated that the price the UC was asking for the marijuana was too high.

### THE SALE OF COCAINE BY SANTOS AND COLON ON JANUARY 31, 2005

19. On January 31, 2005, the UC contacted COLON for the purpose of purchasing an ounce of cocaine and to arrange to show COLON and SANTOS a sample of the marijuana that the UC claimed he/she was prepared to sell. At approximately 4:30 p.m (after a series of consenually recorded calls with COLON to make the necessary arrangements), the UC was provided with a body recorder, a transmitter, $950 in OGC, and sent to Lawrence General Hospital's Emergency Room Parking Lot to meet COLON. At the same time, another group of undercover officers (hereinafter "UC-2 and UC-3") was also separately sent to the area of the Lawrence General Hospital in a second vehicle containing a quantity of marijuana that would be shown to COLON as representative of the marijuana the UC was prepared to sell.

20. UC-1 arrived at Lawrence General Hospital at approximately 4:45 p.m. COLON arrived minutes later. The two met and UC-1 gave COLON $950 and contacted UC-2 and UC-3 to come to the hospital to show COLON the marijuana. They did and COLON asked all three UC's to follow him so that they could meet with SANTOS. All three cars then proceeded to the area of the Tripoli Bakery in downtown Lawrence.

21. SANTOS was waiting at the parking lot of the Tripoli

9

Bakery. SANTOS handed UC-1 a bag of cocaine and was allowed to inspect the marijuana that UC-2 and UC-3 had in their vehicle. UC-1 then had further discussions with SANTOS and COLON regarding the proposed transaction and told COLON and SANTOS to call if they wished to consummate it. As set forth above, SANTOS and COLON ultimately determined that the UC's proposed price for the marijuana was too high and declined to consummate the proposed deal.

22. Based upon the foregoing, I submit that there is probable cause to believe that, since at least October 1, 2005, HARRINGTON COLON, A/K/A "JAVI," AND PEDRO SANTOS, A/K/A "MARIO," have conspired to distribute controlled substances, to wit: (i) more than 50 grams of cocaine base, a/k/a "crack cocaine"; and (ii) cocaine in violation of 21 U.S.C. §846.

                                         JEFFREY E. WOOD, JR.
                                         Special Agent, FBI

Subscribed and sworn to
before me, this 14th day
of February, 2005

JUDITH G. DEIN
United States Magistrate Judge

JS 45 (5/97) - (Revised U.S.D.C. MA 2/7/02)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |

**Place of Offense:** Lawrence   **Category No.** II   **Investigating Agency** FBI

**City** Lawrence   **Related Case Information:**

**County** Essex

Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   HARRINGTON COLON   Juvenile:   ☐ Yes   X No

Alias Name   JAVI

Address   30 ALDER STREET, LAWRENCE

Birthdate: 1978   SS # 000 00 2417   Sex: MALE   Race: Hispanic   Nationalit US

**Defense Counsel if known:** _____   Address _____

Bar Number _____

**U.S. Attorney Information:**

AUSA   JOHN WORTMANN, JR.   Bar Number if applicable   534860

**Interpreter:** ☐ Yes   X No   List language and/or dialect: _____

**Matter to be SEALED:** X Yes   No

   X Warrant Requested   ☐ Regular Process   X In Custody

**Location Status:**

Arrest Date _____

   Already in Federal Custody as of _____ in _____
   Already in State Custody at _____ ☐ Serving Sentence   Awaiting Trial
☐ On Pretrial Release:   Ordered by: _____ on _____

**Charging Document:**   Complaint   ☐ Information   Indictment

**Total # of Counts:**   ☐ Petty   ☐ Misdemeanor   X Felony   1

Continue on Page 2 for Entry of U.S.C. Citations

**I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.**

Date:   2/14/05   Signature of AUSA: [signature]

JS 45 (5/97) (Revised U.S.D.C. MA 2/7/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**    HARRINGTON COLON

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21USC §846 | Conspriacy to distribute crack cocaine and cocaine | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

js-45-colon.wpd - 2/7/02

JS 45 (5/97) - (Revised U.S.D.C. MA 2/7/02)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |

**Place of Offense:** Lawrence    **Category No.** II    **Investigating Agency** FBI

**City** Lawrence    **Related Case Information:**

**County** Essex
Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____    New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   PEDRO SANTOS    Juvenile:   ☐ Yes   X No

Alias Name   MARIO

Address   5 MAPLE STREET APT. 9, HAVERHILL, MA

Birthdate: 1958    SS # 000 00 3602   Sex: MALE   Race: Hispanic   Nationalit US

**Defense Counsel if known:** _____    Address _____

Bar Number _____

**U.S. Attorney Information:**

AUSA   JOHN WORTMANN, JR.    Bar Number if applicable   534860

**Interpreter:**   ☐ Yes   X No    List language and/or dialect: _____

**Matter to be SEALED:**   X Yes    No

X Warrant Requested    ☐ Regular Process    X In Custody

**Location Status:**

Arrest Date _____

Already in Federal Custody as of _____ in _____
Already in State Custody at _____    ☐ Serving Sentence    Awaiting Trial
☐ On Pretrial Release: Ordered by: _____ on _____

**Charging Document:**   X Complaint    ☐ Information    Indictment

**Total # of Counts:**   ☐ Petty    ☐ Misdemeanor    X Felony   1

Continue on Page 2 for Entry of U.S.C. Citations

I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: 2/14/05    Signature of AUSA: _____

JS 45 (5/97)  (Revised U.S.D.C. MA 2/7/02) Page 2 of 2 or Reverse

**District Court Case Number**   (To be filled in by deputy clerk): _____

**Name of Defendant**   PEDRO SANTOS

## U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 21USC §846 | Conspriacy to distribute crack cocaine and cocaine | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

js-45-santos.wpd - 2/7/02